KAREN P. HEWITT
United States Attorney
DAVID L. KATZ
Assistant U.S. Attorney
California State Bar No. 141296
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone No.: (619) 557-5226
Facsimile No.: (619) 557-6741

Attorneys for Plaintiff
United States of America

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal Case No. 07CR2880-JM |
| Plaintiff, | District Judge: Honorable Jeffrey T. Miller |
| v. | Courtroom: 16 (Fifth Floor) |
| | Date: April 18, 2008 |
| | Time: 11:00 a.m. |
| JOSE FRANCISCO GARCIA, | |
| Defendant | **GOVERNMENT'S RESPONSE AND OPPOSITION TO DEFENDANT'S MOTIONS TO:** |
| | **(1) COMPEL DISCOVERY** |
| | **(2) LEAVE TO FILE FURTHER MOTIONS;** |
| | **TOGETHER WITH STATEMENT OF FACTS, MEMORANDUM OF POINTS AND AUTHORITIES, AND GOVERNMENT'S MOTION FOR RECIPROCAL DISCOVERY** |

COMES NOW, the plaintiff, UNITED STATES OF AMERICA, by and through its counsel KAREN P. HEWITT, United States Attorney, and DAVID L. KATZ, Assistant U.S. Attorney, hereby files its Response and Opposition to Defendant JOSE FRANCISCO GARCIA's ("Defendant" or "Garcia") above-referenced motion and hereby files its Motion For Reciprocal Discovery. This Response and Opposition is based upon the files and records of this case.

# I

## **STATEMENT OF THE CASE**

On October 5, 2007, Defendant's initial appearance on the Complaint, Holly Hanover was appointed to represent the defendant. On October 10, 2007, attorney Michael Littman was substituted in as attorney for Defendant and Holly Hanover withdrew her appearance. On October 17, 2007, a federal grand jury returned a two-count Indictment charging the Defendant with one count of Importation of Methamphetamine, in violation of Title 21, United States Code, Sections 952 and 960, and one count of Possession of Methamphetamine with Intent to Distribute, in violation of Title 21, United States Code, Section 841(a)(1). Defendant was arraigned on the Indictment on October 18, 2007 and a motion hearing was scheduled for November 16, 2007. On November 15, 2007, after a joint request for continuance by both parties, the motion hearing was re-set for January 4, 2008.

On January 4, 2008, at Defendant's request, Michael Littman withdrew his appearance in this case and attorney Sylvia Baez was appointed to represent him and the motion hearing date was continued until January 11, 2008. On January 10, 2008, on the Court's own motion, the motion hearing was continued until February 29, 2008, in order for Ms. Baez to review the discovery in this case.

On February 15, 2008, Defendant's newly retained attorney, Christian De Olivas, entered his appearance in the case. On February 29, 2008, at the request of Defendant, the motion hearing was continued, until April 4, 2008, in order for Defendant to consider a disposition of the case by plea agreement. On April 4, 2008, Defendant requested an additional continuance to review and consider a disposition offer from the Government. A motion hearing is currently scheduled for April 18, 2008.

Between October 7, 2007 and April 3, 2008, the Government has provided a total of 96 pages of discovery to Defendant. Additional discovery will be provided as it becomes available to the Government. On November 2, 2007, Defendant filed the above-referenced motions in the case. Because of assurance by defense counsel, up to April 10, 2008, that the case would result in a disposition, the Government has not filed a response to these motions or Motion for Reciprocal Discovery until now. In a conversation with defense counsel on April 10, 2008, in a corridor of the federal courthouse, Government counsel, for the first time, was told that the case would go to trial.

## II

## STATEMENT OF FACTS

**A.    Offense Conduct**

1.    Defendant's Entry to the U.S.

On October 3, 2007, at approximately 5:19 p.m., Defendant entered the United States from Mexico through primary lane 2 at the Tecate Port of Entry (POE) as the driver and sole occupant of a black 1992 Isuzu Impulse, bearing no license plate.  U.S. Customs & Border Protection (CBP) Officer M. Prado, who  was then conducting a primary lane roving operation, noticed that the vehicle had two (2) identical keys and a temporary permit attached to the rear window, had experience with such vehicles being used for smuggling narcotics and began to question Garcia.

Defendant gave a negative declaration when asked if he was bringing anything from Mexico. When he asked Garcia about the history of the vehicle, CBPO Prado noticed that he appeared overly friendly, such as telling Prado about his plans for purchasing a new suspension to make the ride better. For those reasons, Officer Prado escorted Defendant and his vehicle to secondary.

In secondary, Officer Prado requested a K9 inspector to screen the Isuzu with his narcotics detector dog.  While inspecting the trunk of the vehicle, Officer Prado noticed that the rear brake light bolts in the trunk area appeared to have been tampered with.  Further inspection also revealed that the undercarriage area of the bumper had been modified so that the inside area was enclosed and fresh under-spray was visible.  Officer Prado requested further assistance to conduct a more intensive inspection.  CBP Officers O-Connor and McCarthy responded and escorted the Defendant to the office and conducted a pat-down of him, finding $145 in his possession.

2.    Discovery of Methamphetamine Hidden in the Vehicle

Another CBP inspector, Officer Toledo, noticed a drain plug under the modified rear bumper and discovered a package concealed inside of it.  Additional search of the bumper area revealed another seven packages hidden inside.  A field-test of the powder contained in the packages indicated that the substance was methamphetamine.  The methamphetamine was enclosed in Tupperware and wrapped in plastic, and some were vacuum-sealed.  The total weight of the eight packages was 12.05 kilograms.

1    3.    <u>Defendant Advised of His Rights & Invokes</u>

2    Defendant was subsequently placed under arrest and, at approximately 10 p.m., advised of his

3    Miranda rights. He invoked his rights and no further questions were asked or statements taken from

4    Garcia.

5    4. <u>Additional Investigation</u>

6    Subsequent analysis of the drugs, by senior DEA forensic chemist Fracia Martinez, revealed that

7    the methamphetamine was 99.1% pure and its net weight was 8.545 kilograms.

8

9    **III**

10    **ARGUMENT**

11    **A.    Motion for Discovery**

12    The Government has and will continue to fully comply with its discovery obligations. The

13    following is the Government's response to defendant's various discovery requests.

14    1.    <u>Statements of Defendant Have Been Provided</u>

15    The Government will fully comply with Federal Rule of Criminal Procedure 16(a)(1)(A) by

16    providing defendant with his statements, including any tape recordings made of defendant. The

17    Defendant made no post-Miranda statement   Government has provided the defendant with a report

18    containing the general substance of his statements prior to his arrest. The Government will not,

19    however, disclose all oral statements made by the defendant to those individuals not known to be

20    Government Agents. See <u>United States V. Hoffman</u>, 794 F2d. 1429, 1431 (9th Cir. 1986) (Defendant's

21    statements need only be disclosed if made to known Government Agent). However, those oral

22    statements which the defendant made to unknown agents will be timely disclosed prior to trial should

23    the Government decide to use them in its case-in-chief.

24    2.    <u>Arrest  Reports, Notes and Dispatch Tapes</u>

25    The Government has provided the defendant with arrest reports. The substance of relevant oral

26    statements of the defendant are included in the reports already provided. Agent rough notes, if any exist,

27    will be preserved, but they will not be produced as part of Rule 16 discovery.

28

A defendant is not entitled to rough notes because they are not "statements" within the meaning of the Jencks Act unless they comprise both a substantially verbatim narrative of a witness' assertions and they have been approved or adopted by the witness.  United States v. Bobadilla-Lopez, 954 F.2d 519 (9th Cir. 1992); United States v. Spencer, 618 F.2d  605 (9th Cir. 1980); see also United States v. Griffin, 659 F.2d 932 (9th Cir. 1981).

Dispatch tapes, if they exist, will also be provided to defendant.

### 3.  Brady Material

The Government will comply with its obligations under Brady v. Maryland, 373 U.S. 83 (1963).

### 4.  Defendant's Prior Record

The Government is unaware of any prior criminal record of the Defendant.  He has been supplied with all references to that conviction and subsequent arrests in reports in possession of the Government.

### 5.  404(b) Evidence

The Government has complied with Rule 16(a)(1)(B) in providing defendant with his known prior record as set forth in his  "rap sheets".  At this time, the Government is not aware of any available 404(b) evidence.

### 6.  Evidence Seized

The Government has, and will continue to comply with Federal Rule of Criminal Procedure 16(a)(1)(C) in allowing the defendant an opportunity, upon reasonable notice, to examine, copy and inspect physical evidence which is within the possession, custody or control of the Government, and which is material to the preparation of the defendant's defense or are intended for use by the government as evidence in chief at trial, or were obtained from or belong to the defendant, including photographs.

The Government, however, need not produce rebuttal evidence in advance of trial.  United States v. Givens, 767 F.2d 574, 584 (9th Cir. 1984), cert. denied, 474 U.S. 953 (1985).

### 7.  Preservation of Evidence

The Government will preserve whatever evidence was gathered in this case.  The Government has no objection to an inspection of the Isuzu Impulse seized from Defendant by Customs & Border Protection officers after the packages of marijuana were discovered.  However, the Government requests that any order issued to allow those inspections be performed at the earliest possible opportunity to do

1  so and in a timely fashion.  If Defendant wishes to have the methamphetamine re-weighed, the

2  Government has no objection to that being done if a court order to do so is obtained by Defendant.

3  Again, however, the Government asks that this be done at the earliest possible opportunity, and in a

4  timely fashion, as such methamphetamine will be subsequently destroyed due to the massive quantities

5  that are held by the Government.

6           8.    Tangible Evidence

7      See Paragraph 6 above.

8           9.    Evidence of Bias or Motive to Lie

9      The Government will comply with its obligations under Brady v. Maryland, 373 U.S. 83 (1963)

10  and Giglio v. United States, 405 U.S. 150 (1972).  The Government knows of no bias, prejudice or other

11  motivation to testify falsely or impairments of its witnesses, but will make appropriate disclosures if

12  such information should become known.  See Napue v. Illinois, 360 U.S. 264 (1959); Mooney v.

13  Holohan, 294 U.S. 103 (1935).

14      The Government will provide defendant with any agreements made with witnesses it expects to

15  call at trial.

16           10.    Impeachment Evidence

17      As noted above, the Government will comply with its obligations under Brady v. Maryland, 373

18  U.S. 83 (1963) and Giglio v. United States,  405 U.S. 150 (1972).

19      However, under Brady v. Maryland, 373 U.S.  83 (1963), and United States v. Agurs, 427 U.S.

20  97 (1976), the Government must only disclose exculpatory evidence within its possession that is

21  material to the issue of guilt or punishment.  See also United States v. Gardner, 611 F.2d 770, 774 (9th

22  Cir. 1980).

23      Under Brady, the suppression by the prosecution of evidence favorable to the accused violates

24  due process where the evidence is material to guilt or innocence.  United States v. Bagley, 473 U.S. 667

25  (1985);  Favorable evidence includes impeachment evidence.  United States v. Bagley, 473 U.S. 667

26  (1985).

27

28

1    Defendants are not entitled to <u>all</u> evidence known or reasonable known which is or may be

2    favorable to the accused or which pertains to the credibility of the Government's case.  As stated in

3    <u>United States v. Gardner</u>, 611 F.2d 770 (9th Cir. 1980):

4         [I]n response to a request for exculpatory evidence the prosecution does
          not have a constitutional duty to disclose every bit of information that
5         might affect the jury's decision; it need only disclose information
          favorable to the defense that meets the appropriate standard of
6         materiality.

7    <u>Id</u>. at 774-775.

8    Defendant requests the Government provide the criminal record of witnesses the Government

9    intends to call and any information relating to a criminal investigation of a witness.  Although the

10   Government will provide conviction records, if any, which could be used to impeach a witness, the

11   Government is under no obligation to turn over the criminal records of all witnesses.  <u>United States v.</u>

12   <u>Taylor</u>, 542 F.2d 1023, 1026 (8th Cir. 1976), <u>cert</u>. <u>denied</u>, 429 U.S. 1074 (1977).  When disclosing such

13   information, disclosure need only extend to witnesses the Government intends to call in its case-in-chief.

14   <u>United States v. Gering</u>, 716 F.2d 615, 621 (9th Cir. 1983); <u>United States v. Angelini</u>, 607 F.2d 1305,

15   1309 (9th Cir. 1979).

16   The Government will turn over evidence within its possession which could be used to properly

17   impeach a witness who has been called to testify.  Defendants are not entitled, however, to any and all

18   evidence that a prospective witness is under investigation by federal, state or local authorities for

19   misconduct.

20              11.    <u>Witness Addresses</u>

21   The Ninth Circuit has consistently held that the Government, in a non-capital case, is not

22   required to produce a list of witnesses in advance of trial.  <u>United States v. Dischner</u>, 974 F.2d 1502 (9th

23   Cir. 1992), *citing* <u>United States v. Steel</u>, 759 F.2d 706, 709 (9th Cir. 1985).  *See also* <u>Weatherford v.</u>

24   <u>Bursey</u>, 429 U.S. 545 (1977) (<u>Brady</u> does not require that the prosecution reveal before trial the names

25   of all witnesses who will testify unfavorably).

26

27

28

                                                7                                    07CR2880-JTM

In <u>United States v. Jones</u>, 612 F.2d 453 (9th Cir. 1979), <u>cert</u>. <u>denied</u>, 455 U.S. 966 (1980), the Ninth Circuit stated:

> The trial court correctly ruled that the defense had no right to pretrial discovery of information regarding informants and prospective government witnesses under the Federal Rules of Criminal Procedure, the Jencks Act, 18 U.S.C. Section 3500, or <u>Brady v. Maryland</u>, 373 U.S. 83, 83 S.Ct. 1194, 10 L. Ed.2d 215 (1963).

Although the law does not require the Government to disclose witnesses in this type of case, the Government will provide the defendant with a list of witnesses prior to trial.

### 12.    Name of Witnesses Favorable to Defendant

The Government will provide defendants the name of any such witnesses should they become known to the government.  The Government will not, however, provide defendant with any reports taken from individuals interviewed at the time defendant was arrested unless those reports fall within  the dictates of <u>Brady v. Maryland</u>, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) or 18 U.S.C. § 3500. Should the Government become aware of any exculpatory information contained within any of these documents **as they pertain to the defendant**, they will be provided.

### 13.    Statements Relevant to Defense

The Government will provide defendant with any such statement should it become known to the government.

### 14.    Jencks Act Material

The Government will comply with its obligations pursuant to the Jencks Act.

### 15.    Giglio Information

The Government will comply with its obligations pursuant to <u>Giglio v. United States</u>, 405 U.S. 150 (1972).

### 16.    Expert Witnesses

Pursuant to Rule 16(E), the Government will timely disclose all expert witnesses it expects to call at trial along with their curriculum vitaes.  As of this time, the Government expects to call a DEA forensic chemist to identify the drug found in the vehicle driven by the Defendant as marijuana.  It is

also expected that the Government will call a expert witness, most likely a Special Agent with either CBP or ICE, to testify as to the value of the marijuana, both in Mexico and on the streets of the United States.

**B.      Defendant's Motion for Leave to File Further Motions for Leave to
File Further Motions Should Be Conditionally Denied**

The Government opposes the Court's granting leave to the defendant to file further motions absent any newly discovered evidence revealed by future discovery or a change in substantive law which would justify the filing of such a motion.  Defendant has had months within which to file additional motions and has failed to do so.

## VI

## GOVERNMENT'S MOTION FOR RECIPROCAL DISCOVERY

To date, the United States has provided Defendant with 96 pages of discovery.   The United States will continue to comply with all of its discovery obligations as additional reports and/or other discoverable material becomes available.

The Government moves the Court to order Defendants to provide all reciprocal discovery to which the United States is entitled under Rules 16(b) and 26.2.  Rule 16(b)(2) requires Defendants to disclose to the United States all exhibits and documents which Defendants "intend to introduce as evidence in chief at the trial" and a written summary of the names, anticipated testimony, and bases for opinions of experts the defendants intend to call at trial under Rules 702, 703, and 705 of the Federal Rules of Evidence.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## V

### <u>CONCLUSION</u>

The Defendant's motions should be granted and denied as noted in the above discussion and the Government's motion for reciprocal discovery should be granted.

DATED: April 11, 2008

Respectfully submitted,

KAREN P. HEWITT
United States Attorney

s/David L. Katz

_____
DAVID L. KATZ
Assistant U.S. Attorney

07CR2880-JTM